**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

KAMERON KELSEY,                      :
                                     :
    Plaintiff,                       :
                                     :
v.                                   :       CASE NO.: 5:14-CV-82 (LJA)
                                     :
BIBB COUNTY BOARD OF COUNTY          :
COMMISSIONERS, BIBB COUNTY           :
LAW ENFORCEMENT CENTER, JERRY        :
MODENA, and NATHANIEL JORDAN,        :
                                     :
                                     :
    Defendants.                      :
_____:

## ORDER

    Before the Court are the following motions filed by Plaintiff Kameron Kelsey: (1) Motion for Summary Judgment (Doc. 23); (2) Motion for an Expedited Ruling (Doc. 49); (3) Motion to Transfer Venue (Doc. 51); and (4) Motion to Appoint Counsel (Doc. 52). For the reasons that follow, Plaintiff's Motions are **DENIED**.

## BACKGROUND[1]

### I.   Factual and Procedural History

    Plaintiff, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights relating to his arrest and subsequent conviction for armed robbery. Plaintiff alleges that on June 8, 2001, Defendant Nathaniel Jordan unlawfully searched his car and seized certain evidence without a valid warrant. Plaintiff alleges that he was illegally arrested for robbery and possession of marijuana with the intent

---

[1] The relevant facts are derived from the Amended Complaint (Doc. 14), Defendants' Answer to the Amended Complaint (Doc. 16), Plaintiff's Motion for Summary Judgment (Doc. 23), Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 41), and the record in this case. Where applicable, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiffs as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

to distribute and, as a result, was unlawfully detained for six months under a false federal hold. Plaintiff maintains that he should have been released seventy-two hours after his arrest.

On December 12, 2001, Plaintiff alleges that he was released on bond for the marijuana charge and cleared from the federal hold on the robbery charge. Thereafter, Plaintiff alleges that the Macon Telegraph falsely reported that he had been arrested and charged with armed robbery. From February 25, 2002 until November 5, 2002, Plaintiff appears to allege that Defendants fabricated the warrants that served as the basis for the search of his car and residence on June 8, 2001. Plaintiff also appears to contend that on November 13, 2013, he discovered that the search warrants had been fabricated or adulterated.

On November 5, 2002, Plaintiff was indicted and charged with armed robbery, burglary, and possession with intent to distribute marijuana. Plaintiff proceeded to trial on the armed robbery charge and the marijuana charge. Following a jury trial, on July 11, 2003, Plaintiff was found guilty of armed robbery and acquitted of the marijuana charge. Plaintiff was sentenced to ten years of imprisonment followed by five years of probation.

Following his conviction, Plaintiff made numerous unsuccessful attempts in state court to have his conviction vacated. Plaintiff was denied a new trial (Doc. 41-1), and the Georgia Court of Appeals upheld his conviction. (Doc. 41-2.) In 2008, Plaintiff pursued habeas corpus relief, which resulted in a full evidentiary hearing. (Doc. 41-3.) On November 4, 2010, the court denied Plaintiff a writ of habeas corpus, finding that: (1) "none of [Plaintiff's] constitutional right have been violated by his arresting officer," (2) "[Plaintiff] had a fair and legal trial;" (3) "[Plaintiff] has shown neither deficient performance by appellate counsel, nor any resulting prejudice in order to make out an ineffective assistance of counsel claim;" and (4) "[Plaintiff] has not proved by a preponderance of the evidence that his conviction is invalid because his constitutional rights were violated in obtaining the judgment." (Doc. 41-4 at 1.) The Supreme Court of Georgia subsequently denied review of the court's order on January 9, 2012. (Doc. 41-5.) Plaintiff was released from prison on January 5, 2013.

On February 27, 2014, Plaintiff commenced this action, alleging constitutional violations related to his 2001 arrest and detention.[2] (Doc. 14 at ¶¶ 15-57, 62-65.) Plaintiff has also asserted claims of defamation related to the alleged false reporting of his arrest and charge of armed robbery in 2001 and 2002. (*Id.* at ¶¶ 58-60.) As a result of these alleged violations, Plaintiff seeks $100,000,000 in compensatory damages and $400,000,000 in punitive damages. (*Id.* at ¶ 74.) In addition, Plaintiff apparently has asserted a claim for injunctive relief against the Defendant Bibb County Board of County Commissioners.[3] (*Id.* at ¶¶ 66-68.)

Prior to any discovery, Plaintiff moved for summary judgment on October 10, 2014, contending that discovery had closed and that there were no genuine issues of material fact. (Doc. 23.) Since then, Plaintiff has filed numerous briefs and motions, including a Motion for an Expedited Ruling (Doc. 49), a Motion to Transfer Venue (Doc. 51), and a Motion to Appoint Counsel (Doc. 52). On August 4, 2015, Plaintiff also began filing "Judicial Notices," increasing his demand for punitive damages by $100,000,000 a week until the Court rules on his Motion for Summary Judgment. (*See* Docs. 54-59.)

## II.   Prior Federal Lawsuits

During and following his incarceration, Plaintiff filed numerous actions in Federal Court based on the same nucleus of facts. In 2008, he filed three § 1983 actions within days of each other against Linda Pierce and Bobby Peters, seeking $10,000,000 in damages. On November 28, 2008, he commenced the first action in the Northern District of Georgia. *See Kelsey v. Pierce*, No. 1:08-CV-3651 (N.D. Ga.) ("*Kelsey I*"). On December 1, 2008, he commenced the second action in this Court. *See Kelsey v. Pierce*, 4:08-CV-460 (M.D. Ga.) ("*Kelsey II*"). And, on December 8, 2008, he filed the third action, again in the Northern District of Georgia. *Kelsey v. Pierce*, No. 1:08-CV-3719 (N.D. Ga.) ("*Kelsey III*").

On December 19, 2008, *Kelsey III* was administratively closed because it was duplicative of *Kelsey I. Kelsey v. Pierce*, No. 1:08-CV-3719, Doc. 3 (N.D. Ga. Dec. 19, 2008). On, January 14, 2009, this Court dismissed *Kelsey II*, adopting the Magistrate Judge's finding

---

[2] Plaintiff filed an amended complaint on July 1, 2014. (Doc. 14.)
[3] Although Plaintiff refers to "The Board" throughout his pleading, is not entirely clear that Plaintiff is referring to Defendant Bibb County Board of County Commissioners when he uses this phrase, as he also refers to the "Macon-Bibb County Commission" in the Amended Complaint. (Doc. 14 at ¶ 3.)

that Plaintiff's action was barred because his conviction had not been invalidated and a judgment in his favor would imply that the conviction was not valid. *Kelsey v. Pierce*, 4:08-CV-460, Docs. 4, 6 (M.D. Ga. Jan. 14, 2009) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Lastly, on April 9, 2009, *Kelsey I* was dismissed on the basis of improper venue. *Kelsey v. Pierce*, No. 1:08-CV-3651, Doc. 5 (N.D. Ga. Apr. 9, 2009).

On March 22, 2013, Plaintiff commenced a fourth § 1983 action in the Northern District of Georgia against the Macon Judicial Circuit, the Macon Police Department, and numerous individuals, including Defendant Jordan. *See Kelsey v. Macon Judicial Circuit,* No. 1:13-cv-924 (N.D. Ga.). Plaintiff subsequently moved for voluntary dismissal without prejudice, stating that he was unaware at the time he commenced the action that the Northern District was not the proper venue but had since learned that the Middle District was the proper venue. *See id.* at Doc. 26. The court granted Plaintiff's motion on July 16, 2013.

On August 12, 2013, Plaintiff commenced a fifth § 1983 action in this Court against the same Defendants named here, as well as numerous other individuals, alleging constitutional violations related to his 2001 arrest and subsequent confinement and conviction. *See Kelsey v. Board of County Commissioners*, 5:13-CV-285 (M.D. Ga.). The Court dismissed Plaintiff's complaint as frivolous, noting that the complaint was "a quintessential shotgun pleading that the Eleventh Circuit has condemned repeatedly." *Kelsey v. Board of County Commissioners*, 5:13-CV-285, Doc. 4 at *3 (M.D. Ga. Sept. 3, 2013) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)). The Court further found that "to whatever extent the Plaintiff [was] attempting to allege a § 1983 claim for false arrest or malicious prosecution, his claim [was] time barred." *Id.* Notably, the Court warned Plaintiff that "*pro se* plaintiffs have 'no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overload court dockets.'" *Id.* (quoting *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988)). The instant action is Plaintiff's sixth § 1983 complaint arising out of his 2001 arrest and subsequent conviction for armed robbery.

# MOTIONS FOR SUMMARY JUDGMENT AND EXPEDITED RULING

## I.   Standard

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations

5

omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.   Analysis

### A.   Section 1983 Claims

Plaintiff alleges that he was falsely arrested on June 8, 2001, and unlawfully imprisoned until December 12, 2001. Defendants contend that Plaintiff's claims are barred by the statute of limitations.

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008); *see also Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) ("Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983."). In Georgia, where Plaintiff commenced this action and where the alleged wrongs occurred, the applicable limitations period for personal-injury actions is two years. O.G.C.A. § 9-3-33; *see also Lovett*, 327 F.3d at 1182 ("Georgia's statute of limitations is two years."). Although state law dictates the appropriate statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." *Lovett*, 327 F.3d at 1182. A § 1983 claim accrues, and the statute of limitations begins to run, "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quotations omitted).

Plaintiff asserts that the limitations period was tolled during his incarceration and, therefore, the statute of limitations did not begin to run until January 5, 2013. Plaintiff also

contends that his claims did not accrue until November 13, 2013, when he allegedly discovered that the warrants used to search his car and residence were invalid. Plaintiff is mistaken on both fronts.

First, "[t]olling of the limitations period in a § 1983 action is generally determined by reference to state law." *Thompson v. Corr. Corp. of Am.*, 485 F. App'x 345, 347 (11th Cir. 2012) (*Wallace v. Kato*, 549 U.S. 384, 94 (2007)). It is well-settled that "Georgia law does not permit tolling of the limitations period based on a litigant's incarceration status." *Watkins v. Haynes*, No. No. 12-CV-50, 2013 WL 1289312, at *6 (S.D. Ga. Mar. 27, 2013) (citing O.C.G.A. § 9–3–90(b)); *see also Larson v. Grayer*, No. 09-CV-1501, 2010 WL 3730971, at *2 (N.D. Ga. Sept. 20, 2010) (noting that the Georgia legislature amended O.C.G.A. § 9–3–90 in 1984 "by deleting prisoners from the groups of people protected by the tolling provision"). Accordingly, Plaintiff's contention that the limitations period was tolled during his incarceration fails as a matter of law.

Second, false arrest and false imprisonment claims brought pursuant to § 1983 accrue when the claimant is detained pursuant to a legal process. *See Wallace*, 549 U.S. at 397; *see also Jones v. Union City*, 450 F. App'x 807, 809 (11th Cir. 2011) ("False arrest claims brought pursuant to § 1983, where arrest is followed by criminal proceedings, accrue when the claimant is detained pursuant to a legal process."). The facts supporting Plaintiff's claims were apparent when he was arraigned on the armed robbery and marijuana charges and made aware of the case against him. At that time, Plaintiff had the opportunity to challenge the warrants and to seek suppression of any unlawfully obtained evidence. Therefore, Plaintiff's claims accrued when he was arraigned and pled not guilty to the indictment on December 11, 2002 (Doc. 41-12 at 3). *See Wallace*, 549 U.S. at 389 (nothing that "false imprisonment ends once the victim is . . . arraigned on charges"). At the very latest, Plaintiff's claims accrued when he was convicted of armed robbery on July 11, 2003, as a reasonably prudent person would have investigated the validity of the warrants while preparing for trial and discovered any improprieties. *See Salas v. Pierce*, 297 F. App'x 874, 877-78 (11th Cir. 2008) (finding that plaintiff's "claims that the police arrested him without probable cause . . . should have been apparent to [him] on or before the date he was

sentenced"). Accordingly, because Plaintiff did not commence this action within two years of when his claims accrued, his Section 1983 claims are time-barred.

Furthermore, even if timely brought, Plaintiff's claims would still fail. In *Heck*, the Supreme Court held:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed.

*Heck*, 512 U.S. at 486-87 (internal footnotes omitted).

It is undisputed that Plaintiff's conviction has not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. As such, no cause of action yet exits under § 1983, and Plaintiff has thus failed to state a claim upon which relief can be granted. Furthermore, if the Court allowed Plaintiff to proceed with his claims, any subsequent judgment entered in his favor would necessarily imply the invalidity of his conviction. *See Weaver v. Geiger*, 294 F. App'x 529, 533 (11th Cir. 2008) (finding that "allegation of an invalid basis for the search warrant [] amounts to the kind of attack on the factual basis for a conviction that [the Eleventh Circuit] ha[s] deemed impermissible under *Heck*"). Accordingly, Plaintiff's § 1983 claims must be dismissed.

### B. State Law Claims

Plaintiff has also brought a claim for defamation against Defendant Jordan for allegedly publishing his arrest on June 12, 2001, and publishing the indictment on November 5, 2002. As with Plaintiff's § 1983 claims, Plaintiff's defamation claim is time-barred.

Pursuant to O.C.G.A. § 9–3–33, actions for injuries to reputation "must be brought within one year after the right of action accrues." "A suit for slander or defamation is one

for injury to the reputation." *Infinite Energy, Inc. v. Pardue*, 713 S.E.2d 456, 463 (Ga. Ct. App. 2011). A cause of action for defamation accrues, and the statute of limitations begins to run, "on the date of the publication of the defamatory act." *Captiva RX, LLC v. Daniels*, No. 5:14-CV-265, 2014 WL 5428295, at *5 (M.D. Ga. Oct. 23, 2014) (citation omitted). Therefore, in order to be timely, Plaintiff was required to file his action "on the first anniversary of the date of publication." *Pardue*, 713 S.E.2d at 464.

The alleged defamatory statements were made on June 12, 2001, and November 5, 2002. Because Plaintiff did not file this action until February 27, 2014, more than ten years past the one year anniversary of these statements, his claims are barred by the statute of limitations.

### C.   Injunctive Relief

Plaintiff has also moved for injunctive relief against "The Board." Plaintiff characterizes his claim as a "MUST STOP," alleging that The Board is the source behind a conspiracy militia that is using modern day technology to hack his phones, intercept his calls, tamper with his mail, and run surveillance through unmarked vehicles and bribed taxpayers. (Doc. 14 at ¶ 66.) Plaintiff also alleges that The Board has illegally authorized the use of an Electromagnetic Field ("EMF"), which, according to Plaintiff, is "another form of a tracking device that is invisible to the naked eye, that sends out radioactive waves, electro-spectrum clouds, and infrared light to deteriorate Plaintiff and his mother's body tissue, and has caused injury to Plaintiff's neck and upper back, and caused injury of a poisonous sisk [sic] to arise in Plaintiff's mother's mouth that had to be surgically removed in March of 2011." (*Id.*) Plaintiff claims that The Board's use of this "Intelligent High Technology" is the same strategy that was used against Aaron Alexis – "The Navy Yard Shooter" – in retaliation for challenging his pay and benefits, and that the use of the EMF ultimately caused Alexis' violent actions. (*Id.* at ¶ 67.) In his Motion for an Expedited Ruling, Plaintiff further alleges that he needs immediate action on his case because "Aviation Aircraft is currently and steady [sic] flying at a low altitude over Plaintiff's duplex, forming X'S in the sky to send Plaintiff a sign and a message of the KKK (White Supremacy Power) in the geographical area [of] Georgia." (Doc. 49 at ¶ 9.)

"In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotations, citations and alterations omitted). To meet this burden, the movant must show that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Id.* "For a permanent injunction, the standard is essentially the same, except that the movant must establish actual success on the merits, as opposed to a likelihood of success." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).

Plaintiff has neither demonstrated a likelihood of success on the merits nor actual success on the merits. Instead, Plaintiff has made speculative and conclusory allegations with no factual support. Plaintiff's claims are of the kind that the Supreme Court has deemed "factually frivolous" and "clearly baseless" and subject to dismissal under the screening process set forth in 28 U.S.C. § 1915. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citation omitted). The Court described this category of allegations as encompassing those "that are fanciful, fantastic, and delusional." *Id.* at 32-33 (internal citations omitted). As the Court stated, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33.

Plaintiff's allegations are similar to those made by the plaintiff in *Taylor v. Wardworth*, No. 07-CV-281, 2007 WL 1266363, at *2 (M.D. Ala. Apr. 30, 2007). There, the plaintiff alleged that his neighbors and police were sending out "bad spirits and vibes designed to get Plaintiff in trouble, that these same people [were] stalking and harassing him, and that law enforcement officials [were] threatening to kill him unless he leaves town." *Id.* The court dismissed the plaintiff's claims as frivolous, characterizing them as "the types of claims which should be subject to dismissal because they rise to the level of the irrational and reflect the thoughts of a paranoid and/or delusional individual." *Id.*

In addition to the allegations stated above, Plaintiff has alleged that "[a]n unknown suspicious old Caucasian (white male) walked straight across from [his] duplex with a smartphone programming and setting off tracking signals on [his] vehicle with intentions of causing to provoke plaintiff to snap and incriminate himself." (Doc. 49 at ¶ 7.) Similarly, Plaintiff has alleged that this is "a matter of life and death" and that if the Court does not promptly rule on his motion, it faces "the possibility of retaliation from Plaintiff." (*Id.* at ¶ 24.) Plaintiff's claims are not only "fanciful, fantastic, and delusional," they "reflect the thoughts of a paranoid and/or delusional individual." 2007 WL 1266363, at *2; *see also Dillard v. U.S. Dep't of Justice*, No. 12-CV-3875, 2013 WL 754781, at *4 (N.D. Ala. Feb. 25, 2013) (finding that the plaintiff's allegations of a conspiracy and "a campaign of harassment against plaintiff by the FBI are 'fantastic' and 'delusional' . . . . [and] wholly incredible and irrational"); *Dunn v. U.S. Dist. Court for N. Dist. of Florida*, No. 14-CV-529, 2014 WL 6909382, at *2 (N.D. Fla. Dec. 9, 2014) (characterizing as "fantastic or delusional" Plaintiff's "claims that someone has taken control over his thoughts through hypnosis over the telephone, and thus he is not responsible for his actions"); *Williams v. Karf*, No. CV410-221, 2010 WL 5624650, at *1 (S.D. Ga. Dec. 20, 2010) (finding that allegations of "government conspiracy with malicious intent to do bodily harm" by unknown government agents who sought to "abuse plaintiff with electronic devices" were factually frivolous), *report and recommendation adopted sub nom. Williams v. Karpf*, No. 10-CV-221, 2011 WL 201770 (S.D. Ga. Jan. 19, 2011); *Craven v. Florida*, No. 6:08-CV-80-ORL-19, 2008 WL 2856830, at *4-5 (M.D. Fla. July 22, 2008).

While the § 1915 frivolity review is not applicable here as Plaintiff is not proceeding *in forma pauperis*, the underlying rationale is instructive. The Court finds that Plaintiff's allegations are factually frivolous and clearly baseless, and that they fail to establish either a likelihood of success on the merits or actual success on the merits. Accordingly, Plaintiff has failed to state a claim for injunctive relief.

Based the forgoing, the Court finds that Plaintiff's claims must be dismissed. As such, Plaintiff's Motion for Summary Judgment (Doc. 23) is **DENIED** and Plaintiff's Motion for an Expedited Ruling (Doc. 49) is **DENIED**.

## MOTION TO TRANSFER VENUE

Plaintiff has moved pursuant to 28 U.S.C. U.S.C. § 1404(a) to transfer this matter to the United States District Court for the Northern District of Georgia. (Doc. 51.) Plaintiff asserts that this action should be transferred there because the undersigned "is new on the federal bench and inexperienced" and "is too influenced and controlled by politics." (Doc. 51 at 3.) Plaintiff also asserts that the Northern District of Georgia "is a more quality and luxurious court with structure" that will honor his emergency motions. (*Id.* at 4.) Lastly, Plaintiff asserts that "GOD" has revealed to him "a courtroom with a judge's mallet frozen, which represents 'no justice in this District of Georgia and no interest in justice.'" (*Id.*) Plaintiff further asserts the "GOD" has revealed to him "keys covered with dirt, which is plaintiff has the keys to the courthouse with an 'open-shut case' that has been covered up for over a decade and is steady [sic] being covered up with no interest to justice." (*Id.*)

Section 1404(a) authorizes a district court to transfer a civil action to any other district in which it might have been brought for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. U.S.C. § 1404(a). "The threshold inquiry on a § 1404(a) motion is whether the transferee district is a district where the action originally might have been brought." *C.M.B. Foods, Inc. v. Corral of Middle Georgia*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (internal quotations omitted). Therefore, before considering the factors justifying a transfer under Section 1404(a), the Court must determine whether the action could have been brought in the Northern District of Georgia.

Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in one of the following:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In his Motion, Plaintiff admits that all of the Defendants reside in the Middle District of Georgia. (Doc. 51 at 2.) Furthermore, the Amended Complaint makes clear that the events

giving rise to this action occurred in the Middle District of Georgia. (*See* Doc. 14.) Therefore, Plaintiff has failed to establish that this action could have been brought in the Northern District of Georgia. Plaintiff is certainly aware of the fact that venue is not proper in the Northern District of Georgia as he voluntarily dismissed his action filed there on the basis of improper venue. *See Kelsey v. Macon Judicial Circuit,* No. 1:13-cv-924, Doc. 26 (N.D. Ga. July 8, 2013). Accordingly, Plaintiff's Motion to Transfer (Doc. 51) is **DENIED**.

## MOTION TO APPOINT COUNSEL

In general, a "civil plaintiff has no constitutional right to counsel, but a district court may appoint counsel for an indigent plaintiff pursuant to 28 U.S.C. § 1915(e)(1)." *Vickers v. Georgia,* 567 F. App'x 744, 749 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir.1999)). Appointment of counsel is a privilege that is justified only by "exceptional circumstances, such as the presence of facts and legal issues which are so novel or complex as to require the assistance of a trained practitioner." *Id.* (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir.1993)). "A district court has broad discretion in determining whether such circumstances exist." *Id.* (citing *Smith v. Fla. Dep't of Corrs.*, 713 F.3d 1059, 1063 (11th Cir. 2013)).

Plaintiff contends that he "is in need of a 'Caucasian' appointed attorney to represent [him] in this rare case because of the damages at large and political reasons involving the distribution of wealth to an African-American in the country, especially in the state of Georgia." (Doc. 52 at 1.) Plaintiff further contends that licensed attorneys receive more favorable treatment than *pro se* litigants, and that *pro se* litigants are at a disadvantage because they are held to the same standard as licensed attorneys. (*Id.* at 2.) Plaintiff's contentions are unavailing.

First, because Plaintiff is proceeding *pro se*, his pleadings and filings are held to a less stringent standard than documents drafted by an attorney and are liberally construed. *See Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.1998))). Second, there is no support for Plaintiff's contention that motions filed by licensed attorneys

are given preferential treatment or addressed more promptly by the Court. Lastly, Plaintiff's subjective beliefs regarding prejudices against African-Americans in Georgia do not qualify as an exceptional circumstance justifying the appointment of legal counsel. Likewise, Plaintiff's conclusory assertions regarding the complexity of his case are insufficient to demonstrate that the essential facts and legal doctrines are so novel or complex as to require the assistance of a trained practitioner. Accordingly, Plaintiff's Motion to Appoint Counsel (Doc. 52) is **DENIED**.

**CONCLUSION**

In light of the forgoing, Plaintiff's Motion for Summary Judgment (Doc. 23), Motion for an Expedited Ruling (Doc. 49), Motion to Transfer Venue (Doc. 51), and Motion for Appointment of Counsel (Doc. 52) are **DENIED**. Furthermore, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff shall take nothing by his Amended Complaint (Doc. 14), and **JUDGMENT** shall be entered in favor of Defendants. The Court also reiterates its prior warning that *pro se* litigants do not a have a "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson*, 841 F.2d at 387.

**SO ORDERED**, this 10th day of September, 2015.


        /s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**